**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re Emmanuel College Data Security Incident | Case No. 1:24-CV-10314-AK<br>Judge: Hon. Angel Kelley |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

## I. INTRODUCTION

On March 13, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiffs Elizabeth Parchinskya, Grace Viviano, Brian Hamdan, Sopiya Shrestha, Casey Whalen and Luke Millspaugh (collectively, "Plaintiffs") and Defendant The Trustees of Emmanuel College ("Emmanuel College" or "Defendant"). The class action and resulting settlement arose from a data security incident at Emmanuel College, in which the personal information belonging to Plaintiffs and the Class were allegedly compromised (the "Data Incident"). Class Counsels' efforts created significant benefits for the Settlement Class, including the establishment of a $825,000 non-reversionary settlement fund from which Settlement Class Members[1] may claim: (1) reimbursement for documented out-of-pocket losses up to $5,000 incurred as a result of the Data Incident; (2) a *pro-rata* cash payment of up to $350; and (3) the opportunity to claim two-years of credit monitoring and identity-theft insurance protections.

Throughout this litigation, Class Counsel have zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arm's-length negotiations and full-day mediation. As compensation for the substantial benefits conferred

[1] Capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Release (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."). *See* Settlement ("S.A."), attached as Exhibit 1 to the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, ECF 30.

upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $275,000, which amounts to one-third (1/3) of the Settlement Fund, plus an additional $11,564.23 in reasonable case expenses actually incurred. Plaintiffs' motion should be granted because the request is reasonable and appropriate in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case; and because the costs incurred were reasonable and necessary for the litigation. Plaintiffs also respectfully move the Court for an award of $2,500 each to the named Plaintiffs, to be paid from the Settlement Fund, for their work on behalf of the Class.

## II. CASE SUMMARY

### A. The Data Incident

Defendant controls Emmanuel College, which is a not-for-profit college in Boston. In April of 2023, unauthorized actors gained access to files on Emmanuel College's information and computer systems. These files contained personally identifying information ("PII") belonging to students, former students, and applicants to the College and included information such as names, academic transcripts, class schedules, dates of birth, student ID numbers, financial aid awards, financial aid payments, GPA, grade assignments and test scores, health insurance information, and other medical records. The Data Incident potentially impacted approximately 85,817 individuals.

Several related class action lawsuits were filed in the wake of the disclosure of the Data Incident. Counsel for plaintiffs in these related cases then worked together to organize and consolidate the cases, which included the creation of a leadership structure. On April 12, 2024, these cases were formally consolidated upon motion by plaintiffs in the related cases and on May 13, 2024, the Plaintiffs filed their Consolidated Class Action Complaint ("CCAC"). ECF 18.

Emmanuel College initially planned to prepare and file a motion to dismiss the CCAC pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF 21 at 2. However, the Parties had begun engaging in informal settlement discussions shortly after Plaintiffs filed the CCAC. *Id.* at 3. Over the course of these discussions, the Parties ultimately agreed to mediate the disputes, and on June 24, 2024, the Parties submitted a joint motion to stay the case pending mediation, which was subsequently granted. ECF 22.

After weeks of discussions, which included the exchange of informal discovery, the Parties attended a full-day mediation session with Andrew Nadolna, Esq., of JAMS. Although significant progress was made at the mediation, the Parties were unable to reach a formal resolution. Nonetheless, the Parties continued to negotiate in good faith and at arm's length and ultimately reached an agreement to settle this matter, the terms of which are memorialized in the Settlement Agreement. The Settlement Agreement resolves all claims and causes of actions asserted, or that could have been asserted, against Defendant relating to the Data Incident, by and on behalf of Plaintiffs and the Settlement Class.

**B. Settlement Benefits**

The Settlement Agreement calls for certification of a Settlement Class defined as: "all residents of the United States who were notified by Emmanuel College that their PII was or may have been affected in the Data Incident who have not opted-out of the Settlement. The Settlement Class consists of as many as 89,065 individuals." S.A. ¶ 1.59.[2]

**a. *The Settlement Fund***

[2] Excluded from the Settlement Class are: (1) the Judges presiding over the Action, the Judges' courtroom staff, Class Counsel, and members of their families; (2) Emmanuel College and its subsidiaries, parent companies, successors, predecessors, and any entity in which Emmanuel College or its parents, have a controlling interest, and its current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons. *Id.*

Emmanuel College agreed to make available to Plaintiffs and the Class a non-reversionary Settlement Fund of $825,000 to pay for: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee Award and Costs approved by the Court; (v) reimbursements for Documented Losses up to $5,000 per Class Member; (vi) Pro Rata Cash Payments, and (vii) Credit Monitoring and Insurance Services. S.A. ¶¶ 3.6.1; 4.1–4.2.

**b. *Monetary Compensation***

Reimbursement of Documented Losses: Settlement Class Members may submit claims for out-of-pocket losses up to $5,000.00 incurred as a result of the Data Incident. S.A. ¶ 1.23. Settlement Class Members need only provide reasonable documentation and an attestation of the loss as part of the claim form to receive this reimbursement. S.A. ¶ 4.1.1.

*Pro Rata* Cash Payment: All Settlement Class Members who submit a valid claim form, regardless of whether or not they claim any Documented Losses, will receive a *pro-rata* distribution from the Net Settlement Fund up to $350.00. S.A. ¶¶ 4.1.2, 4.6.1.

**c. *Credit Monitoring and Insurance Services***

All Settlement Class Members are also eligible to claim two (2) years of identity theft protection services. S.A. ¶ 4.2.

**d. Release**

The release is tailored to the claims that have been pleaded or could have been pleaded that are related in any way to the activities stemming from the Data Incident.[3] Upon entry of the Final

[3] Released Claims, defined in Section 1.51 of the Settlement, include "any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses." S.A. ¶ 1.51.

Approval Order, Plaintiffs and the Settlement Class Members who do not submit a valid and timely Opt-Out Request will release all such claims against the Released Parties. S.A. ¶ 1.53.

### C. The Notice and Claims Process

#### 1. Notice and Claims

In its Order granting preliminary approval, the Court appointed Simpluris, Inc. Settlement Administrators, LLC ("Simpluris") as the Settlement Administrator in this case. Defendant will pay for the cost of providing notice and claims administration separate and apart from the Settlement Payments available to Settlement Class Members. S.A. ¶¶ 3.6.1; 4.1–4.2.

The Plan requires direct notice be provided via email and mail to the Settlement Class Members, and for the establishment of a Settlement Website. S.A. ¶¶ 6.4; 6.6. Plaintiffs will submit a declaration from Simpluris detailing the notice and claims administration with their Motion for Final Approval of Class Action Settlement.

### D. Fees, Costs and Service Awards

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs separate from the benefit to Class Members. The Parties agreed that Class Counsel will seek attorneys' fees in an amount not to exceed one-third of the Settlement Fund, or $275,000, plus reimbursement of reasonable litigation expenses.. S.A. ¶ 11.1. The Settlement Agreement also provides for a reasonable service award to be sought for Plaintiffs in the amount of $2,500 for each Plaintiff. S.A. ¶ 10.1.

## III. ARGUMENT

### A. An Award of one-third of the Settlement Fund is Reasonable

It is well settled that attorneys whose efforts achieve a benefit for class members are entitled to "attorneys' fees and reimbursement of expenses prior to the distribution of the balance

to the class." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Rule 23 also permits courts to award "reasonable attorney's fees and nontaxable costs . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As numerous courts recognize, the goal of an award of attorneys' fees is "to compensate plaintiffs' counsel fairly for the labor provided, taking into account the risks they faced during the representation." *Ranbaxy*, 630 F. Supp. 3d at 245. District courts have broad discretion to award fees. *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295, 307 (1st Cir. 1995).

Generally, courts have found that for cases involving a common fund, as is the case here, the percentage of the fund method is the appropriate method for determining the reasonableness of an attorneys' fees request. *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The POF method has emerged in the last decade-plus as the preferred method of awarding fees in common fund cases. As the First Circuit has noted, the POF method has distinct advantages over the lodestar approach."). *See also In re Solodyn Antitrust Litig.*, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (using the percentage of the fund method); *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (D. Mass Dec. 7, 2017) (same). "The First Circuit has acknowledged the 'distinct advantages' of the POF method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics." *Ranbaxy*, 630 F. Supp. 3d at 245 (quoting *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307). "The POF method is preferred in common fund cases because 'it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cabletron Sys.*, 239 F.R.D. at 37 (citation omitted). Further, the POF approach stems from the Court's inherent equitable powers by awarding fees and costs payable (or measured) from the fund created

for the benefit of the class the court can spread the cost of litigation proportionately among those who will benefit from the fund. *See Sprague v. Ticonic National Bank*, 307 U.S. 161, 167 (1939); *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980).

Class Counsel seek an award of one-third or 33.33% of the Settlement Fund. This request is within the range of fee requests that have been approved in this judicial district. *See In re Neurontin Mktg. & Sales Practices Litig*., No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."); *Ranbaxy*, 630 F. Supp. 3d at 245 (collecting cases); *Kondash v. Citizens Bank, Nat'l Ass'n*, 2020 WL 7641785, at *6 (D.R.I. Dec. 23, 2020), report and recommendation adopted, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (awarding 1/3 of a $1.8 million settlement fund in attorneys' fees); *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (awarding 1/3 of a $30.9 million settlement fund in attorneys' fees). Class Counsel's request for an award of one-third of the settlement fund is thus entirely consistent with other awards in common fund cases, and should be approved here.

### B. Class Counsel's Expertise and Effort, the Risks of the Case, and the Achieved Result Justify the Fee Request

The First Circuit has yet to establish a specific set of factors for district courts to consider when assessing applications for attorneys' fees. Instead, district courts have broad discretion to consider a wide variety of factors. Nonetheless, a survey of fee awards by courts within the First Circuit reveal that the following factors are typically considered when assessing fee requests: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and

efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citation omitted); *see also In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Applying each of these factors, Class Counsel's fee request is reasonable and justified.

*i. The size of the created Settlement Fund and the benefits provided*

The most important inquiry pertains to the results obtained for the class. *Hensley v. Eckerhart,* 461 U.S. 422, 436 ("the most critical factor is the degree of success obtained"). As described *supra*, the Settlement provides substantial relief to the Settlement Class consisting of nearly 90,000 individuals. Defendant has agreed to establish a Settlement Fund in the amount of $825,000 which will be used to provide a variety of benefits to the Settlement Class: (1) reimbursement for Documented Losses of up to $5,000; (2) a *pro-rata* share of up to $350; and (3) two-years of credit monitoring services and identity theft insurance. These benefits are comparable to, and in some cases superior to, those provided by other data breach settlements. *See, e.g., Barletti v. Connexin Software, Inc.*, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (granting preliminary approval to data breach settlement that provided class members the ability to file a claim for credit monitoring services, out-of-pocket losses; or an alternative cash payment); *In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-06019-GEKP, ECF 181 (E.D. Pa. Feb. 19, 2021) ($5 gift card or $15 gift cards with proof

of actual or attempted fraud). This outcome can only be described as a success, and entirely consistent with the outcomes in other data breach settlements. Thus, the fact that Class Counsel was able to achieve such an outcome weighs heavily in favor of approving the requested award.

*ii. The risks of litigation support the requested fee award*

Courts recognize the risk assumed by an attorney as a key factor in determining an appropriate fee. *See In re Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk assumed by an attorney is perhaps the foremost' factor in determining an appropriate fee award.").

Here, Class Counsel took on significant risk. While Plaintiffs believed they could prevail on their claims against Defendant, they were also aware that they would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative class members. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. The general risks of litigation are further heightened in the data breach arena. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law."); *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Further, Class Counsel took this case on a purely contingent basis. *See* Joint Declaration Counsel in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Award ("Joint Fee Decl."), attached hereto, ¶¶ 11-14. As such, they assumed significant risk of nonpayment or underpayment. *Id.* Essentially, fees were not guaranteed. The purely contingent basis upon which Class Counsel took the case meant that Class Counsel assumed significant risk. *Id.* Class Counsel spent time on this matter that could have otherwise been spent on other, fee-generating matters, and shouldered the risk of expending substantial costs and time without any monetary gain in the case of adverse judgment. *Id.* at ¶ 12. Nonetheless, Class Counsel took on these risks knowing full well their efforts may not bear fruit and their willingness to take on this litigation in the face of such risk deserves to be rewarded.

*iii. The complexity and skills required to litigate this matter and Class Counsel's substantial experience*

As discussed above, the skill required to litigate data breach cases is great, in part due to the quickly evolving nature of data breach and privacy law. *See Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). The Parties would have faced significant risk and expenses to litigate the case. For example, the necessary expert analyses (and inevitable fight over *Daubert* challenges) to determine whether Emmanuel College's data security practices were unreasonable would have cost hundreds of thousands of dollars and months of litigation on their own. *See e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig*., 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (noting that, absent settlement, plaintiffs' challenges would include "significant and expensive additional discovery" and "hiring more experts and opposing the defendants' experts").

The appointed Class Counsel have decades of experience in class actions generally, but it is noteworthy that the firms' partners have previously been appointed class counsel in a number of data breach and privacy class actions. *See* Joint Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, ECF 30-2, ¶ 26, Exhibits A-E (summarizing Class Counsels' experience, and their resumes). Class Counsel have an established track record and experience in litigating Plaintiffs' and Class Members' claims. The significant experience and qualifications of counsel easily justify the requested fee.

*iv. The Request is comparable to awards in similar cases*

As demonstrated *supra* in § III.A, the request fee of one-third of the Settlement Fund is well within the range of reasonable fees previously awarded by other judges of this Court in common fund data breach cases. *See, e.g. Webb v. Injured Workers Pharmacy,* Case No. 1:22-cv-10797-RGS (D. Mass.), ECF 61 (January 16, 2025) (granting final approval of a non-reversionary common fund data breach settlement and attorneys' fees of one-third of the $1,075,000 Settlement Fund); *Kondo et al. v. Creative Services, Inc.,* Case No. 1:22-cv-10438-DJC (D. Mass.), ECF 39 (September 7, 2023) (granting final approval of non-reversionary common fund data breach settlement and attorneys' fees of 33% of $1.2 million Settlement Fund). An award of one-third of the Settlement Fund is also consistent with fee awards in other data breach or data privacy cases. *See Barletti v. Connexin Software, Inc.*, 2024 WL 3564556 (E.D. Pa. July 24, 2024) (awarding 1/3 of settlement fund as attorneys' fees and $50,000 in expenses in data breach settlement); *In re Novant Health, Inc.*, 2024 WL 3028443, at *12 (M.D.N.C. June 17, 2024) (awarding 1/3 of the settlement fund); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *7 (E.D. Wis. Mar. 22, 2023) (awarding 1/3 of settlement fund); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019

WL 2720818, at *4 (N.D. Ga. June 6, 2019) (same); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 940–941 (N.D. Ill. 2022).

*v. Public Policy Considerations Support the Requested Fee*

The requested fee supports public policy goals. Simply put, class actions such as this litigation play a vital role in motivating entities that handle sensitive information, such as Defendant, to improve their security practices and *prevent* data breaches, which has become an epidemic in recent years. For example, the Identity Theft Resource Center reported 3,158 total data breaches in 2024, including five "mega-breaches" involving at least 100 million individuals, with an astonishing 1,350,835,988 total data breach notices sent out.[4] This is just 47 breaches short of 2023's record-breaking 3,205 events involving 353,027,892 victims.[5] Furthermore, both 2024 and 2025 doubled the number of compromises in 2022, which had 1,802 total compromises involving 422,143,312 victims.[6] The actual ramifications from these data breaches have been just as severe, with one in four data breach victims eventually becoming victims of identity theft. As if to demonstrate this fact, in 2023, the Federal Trade Commission received over 1 million complaints of identity theft and 2.6 million complaints of related fraud, which resulted in total financial losses that exceed $10 billion.[7]

These data breaches show no sign of slowing and one-in-four of the 1,350,835,988 instances in 2024 in which information was compromised will eventually metastasize as a costly

[4] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf

[5] *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[6] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

[7] Jim Akin, *U.S. Fraud and Identity Theft Losses Topped $10 Billion in 2023*, Experian (July 25, 2024), https://www.experian.com/blogs/ask-experian/identity-theft-statistics.

identity theft incident for an unfortunate citizen. Class actions such as this play a vital role in holding handlers of data breaches accountable, and the reimbursements they are required to pay to victims provide the necessary incentive for them to harden, strengthen, and otherwise improve their systems against the ever-rising tide. Furthermore, class actions are the only realistic way for individual citizens to vindicate their right to safeguard and protect their PII. Given the relatively small and difficult-to-quantify amounts of individual damages, pursuing claims on an individual basis would have been economically and judicially inefficient. And without the class action device, they would simply see no recovery. *See Mazola v. May Dep't Stores Co.*, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]").

### C. The Lodestar Crosscheck Confirms that the Requested Fees are Reasonable

Although not required, courts within the First Circuit have utilized the "lodestar calculation as a pragmatic cross-check" for percentage-based fee awards. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009) (internal citation omitted); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307. When used this way as a cross-check, "the lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010). "The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts need not review actual billing records and are free to rely on time summaries submitted by attorneys." *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 365 F. Supp. 3d 685, 701 (S.D.W. Va. 2019).

To conduct the lodestar cross check, the court multiplies the number of hours reasonably spent by a reasonable hourly rate. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005). "Reasonable fees are to be calculated according to the prevailing market rates in the relevant community." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020).

Here, Class Counsel's Fee Request results in a modest multiplier, which supports the reasonableness of the requested fee. Since January 2024, Class Counsel has spent 343.33 hours litigating this case. Joint Fee Decl., ¶¶ 22-27. The rates charged by Class Counsel are well within the acceptable range for class action litigators in general and are in line with or less than hourly rates that were approved in other complex data breach class action litigation. *Id.*

Class Counsels' billing rates are within the range of rates approved by this Court. *See Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (finding that hourly rates for attorneys nationally have increased since 2020 and approving $1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks). *See also Alexander v. Massachusetts Dep't of Correction*, 734 F. Supp. 3d 133 (D. Mass. 2024) (approving hourly rates of $560 to $600 for partners and $345 to $385 for associates*); McNelley v. 7-Eleven, Inc.*, 2024 WL 4872394 (D. Mass. Nov. 21, 2024) (finding hourly rates of $325 to $400 reasonable); *Riley v. Mass. Dep't of State Polic*e, 2019 WL 4973956, at *2 (D. Mass. Oct. 8, 2019) (finding $600 per hour for a senior partner and $350 per hour for an associate were reasonable rates); *Cox v. Mass. Dep't of Corr.*, 2019 WL 2075588.

Class Counsel's total lodestar is $259,603.00. Joint Fee Decl. ¶ 22. This lodestar results in a multiplier of 1.06. In this judicial district, lodestar multipliers allowed by the court are generally

between one and 2.7. *In re Ranbaxy Generic Drug Application Antitrust Litig*., MDL No. 19-md-02878-NMG, 630 F. Supp. 3d 241, 246 (D. Mass. Sept. 19, 2022) ("[t]he typical range of the lodestar multiplier allowed by this Court is between one and 2.7."). Therefore, the lodestar cross-check confirms the reasonableness of Class Counsel's request.

**D. Class Counsel's Request for Reimbursement of Expenses Is Reasonable**

In addition to the requested attorneys' fees, Class Counsel also request reimbursement of expenses incurred in bringing this litigation to this successful conclusion. "In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during litigation." *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011) (citing *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). *See also Hill v. State St. Corp.*, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015) (citation omitted) ("Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."). Due to the early stage of litigation at which Plaintiffs were able to reach settlement, litigation costs incurred by Plaintiffs are relatively low. Joint Fee Decl. at ¶ 31. Class Counsels' current costs are $11,564.23, and include filing fees, mediation fees, and costs of admission to practice before this Court. *Id.* These costs are reasonable and were necessary for the litigation. *Id. See Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving expenses related to mediation, travel, filing fees, and postage); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving expenses related to document management, expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery). All of Class Counsel's expenses are of the type that are commonly reimbursable and entirely reasonable.

### E. The Requested Service Awards for Plaintiffs are Reasonable

Class Counsel further request that this Court approve service awards in the amount of $2,500.00 for each of the Settlement Class Representatives. The service awards compensate Plaintiffs for their efforts on behalf of the Settlement Class, which includes maintaining regular contact with Class Counsel, assisting in the investigation of the case through producing relevant documents and participating in interviews with counsel, reviewing and revising the CCAC, remaining available for consultation throughout negotiations, for answering counsels' many questions, and for reviewing the Settlement Agreement. Joint Fee Decl. ¶¶ 32-33. "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (approving award of $2,500 service awards for each representative plaintiff).[8] *See also Sasoon v. Postmates, Inc.*, 2020 WL 8092224, at *4 (D. Mass. May 15, 2020) (approving award of $2,500 service awards for each representative plaintiff); *Bazerman v. Am. Airlines, Inc.*, 2019 WL 13217437, at *3 (D. Mass. Apr. 8, 2019) (same); *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75 (D. Mass. 2005) (approving $2,500 service award for each representative plaintiff who was not deposed).

## III. CONCLUSION

For the foregoing reasons, Class Counsel requests that the Court grant this motion and approve a combined award of $275,000 for attorneys' fees, reimbursement of 11,564.23 of Litigation Costs, and Service Awards in the amount of $2,500 for each Settlement Class Representative.

---

[8] *See also* Manual for Complex Litigation, § 21.62, at n.971 (4th ed. 2004).

Dated: June 6, 2025

Respectfully submitted,

By: /s/ David K. Lietz

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
dlietz@milberg.com

Carl V. Malmstrom (admitted *pro hac vice*)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Kevin Laukaitis (admitted *pro hac vice*)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4492
klaukaitis@laukaitislaw.com

Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Tel: 312-782-4880
nhagman@caffertyclobes.com

Daniel Srourian (admitted *pro hac vice*)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on June 6, 2025, the undersigned filed via CM/ECF the foregoing document, which will thereby serve a true and correct copy of the same electronically upon all counsel of record in this action at all email addresses designated by them for service.

*s/ Nickolas J. Hagman*
Nickolas J. Hagman